896 F.Supp. 132 (1995)
Anne MEYERS, Plaintiff,
v.
Richard D. SIMONS, as Temporary Chief Judicial Officer of the Unified Court System and Chairman of the Administrative Board of the Courts, Matthew T. Crosson, as Chief Administrator of the Courts, Joseph Traficanti, Jr., as Deputy Chief Administrative Judge of the Courts Outside New York City of the Unified Court System (Office of Court Administration) of the State of New York, Angelo J. Ingrassia, as Administrative Judge of the Ninth Judicial District, Gilbert Rabin, individually and as Chief Judge of the City Court of the City of Yonkers, George Berghorn, individually and as a Court Clerk of the City Court of the City of Yonkers, Anna M. Carriello, individually and as Chief Clerk of the City Court of Yonkers, Edward V. Regan, Comptroller of the State of New York and Administrative Head of the New York State Employees Retirement System, and/or the New York State Employees' Retirement System, and the State of New York, Defendants.
No. 92 CV 8512 (BDP).
United States District Court, S.D. New York.
August 10, 1995.
*133 Arthur H. Grae, Hastings-on-Hudson, NY, for plaintiff.
Marcie Mintz, New York City, for defendants.

MEMORANDUM DECISION and ORDER
PARKER, District Judge.

FACTS
This action under 42 U.S.C. § 1983 for the violation of civil rights is before this Court on the Defendants' motion for summary judgment. The Plaintiff, Anne Meyers ("Meyers"), seeks declaratory, injunctive and monetary relief for her allegedly retaliatory discharge from employment with the City Court of the City of Yonkers ("the City Court") in violation of her First Amendment rights to freedom of speech and association and to free exercise of religion.
The Defendants are Richard Simons, Temporary Chief Judicial Officer of the Unified Court System and Chairman of the Administrative Board of the Courts, Matthew T. Crosson, Chief Administrator of the Courts, Joseph Traficanti, Jr. Deputy Chief Administrative Judge of the Courts Outside New York City of the Unified Court System (Office of Court Administration) of the State of New York, Angelo J. Ingrassia, Administrative Judge of the Ninth Judicial District, Gilbert Rabin, individually and as Chief Judge of the City Court of Yonkers, George Berghorn, individually and as Court Clerk of the City Court of the City of Yonkers, Anna M. Cariello, individually and as Chief Clerk of the City Court of Yonkers, Edward V. Regan, Comptroller of the State of New *134 York and Administrative Head of the New York State Employees Retirement System, and/or The New York State Employees' Retirement System, and the State of New York.
On May 21, 1992, Meyers was appointed on a "contingent permanent basis" to the position of court assistant in the City Court. She was informed that her appointment was "subject to the successful completion of a probationary period, in accordance with the Rules of the Chief Judge." The Rules of the Chief Judge provide that an individual must serve "a probationary term of not less than 26 nor more than 52 weeks," but that "[i]f the conduct or performance of a probationer is not satisfactory, his or her employment from such position may be terminated at any time after eight weeks."
Meyers began her appointment in the landlord/tenant division of the City Court under the immediate supervision of Defendant George Berghorn ("Berghorn"). Berghorn reported to the Deputy Chief Clerk, Mary D'Alessio ("D'Alessio"), who in turn reported to the Chief Clerk, Defendant Anna Cariello ("Cariello"). Berghorn assigned Lesley Steinberg ("Steinberg"), a court assistant, to train Meyers in her duties, which included calling the court's calendar, data entry and processing judgments and warrants.
After three weeks of supervising Meyers's work and consulting with Steinberg, on June 11, 1992, Berghorn met with both Meyers and Steinberg to review Meyers's performance. He informed Meyers that she needed to be more organized, particularly in sorting and marking files during the morning calendar call, and that she needed to raise her voice when she called the calendar. He also told her that he felt that her willingness to learn and help in the back office would make her an asset to the City Court in the long run.
In their depositions, Steinberg, Berghorn and D'Alessio all testified that Meyers's performance did not improve, that she refused to follow instructions and that she demonstrated poor judgment on other occasions as well. Meyers does not deny that Steinberg, D'Alessio and Berghorn testified to these allegations, but she disputes their truth. She denies that certain incidents referred to by Steinberg, Berghorn or D'Alessio occurred or offers an alternate scenario. In addition, she denies that her work performance was unsatisfactory. Effective August 25, 1992, Meyers was transferred to the traffic division of the City Court.
On August 21, 1992, her final day in the landlord/tenant division, Meyers observed an eviction proceeding in which the court issued a warrant of eviction and a judgment against the defendants, Stephen and Perry Fiorni ("the Fiornis"). On September 8, 1992, while the Fiornis' eviction proceeding was still pending, Meyers wrote a check in the amount of nearly $3,000 to the Coalition for the Homeless of Westchester and earmarked it "for the Fiorinis." Meyers claims that she made the donation in accordance with her religious belief as a member of the Jewish Faith to satisfy the religious commandment of Tzedakh. The next day, the parties to the eviction proceeding appeared before the court. The landlord's attorney informed the judge that the action had settled because an employee of the court had contributed to the payment of rent arrearage and that he felt there was a breach of the court's duty to appear impartial. The judge confirmed with Meyers that she had made the donation and reported the matter to the Chief Judge, who met with Cariello and D'Alessio to discuss the matter.
On September 17, 1992, Berghorn completed a performance evaluation of Meyers, in which he listed the areas in which he was dissatisfied with her performance and recommended her for termination. Meyers received the evaluation on the same day, and Cariello and Berghorn discussed it with her. She was terminated, effective October 21, 1992.
Meyers claims that she was discharged because of her donation, in violation of her First Amendment rights. The Defendants now move for summary judgment on the grounds that (1) the government's compelling interest in maintaining the judiciary's appearance of impartiality outweighs any minimal interference with Meyers's First Amendment rights, and (2) an assessment of Meyers's *135 performance record would have resulted in a decision to discharge her anyway and Meyers's donation simply made the Defendants more certain of their decision.
In Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court held that even though an employee's constitutionally protected conduct was a "substantial factor" in an employment decision, relief was justified only if the employer would not have made the same decision solely on the basis of the employee's performance record. Because the Defendants have offered considerable evidence of Meyers's unsatisfactory performance as the basis for their decision and Meyers has offered no significantly probative evidence that she would not have been discharged absent her protected conduct, the Defendants' motion for summary judgment is granted.
Because the Court grants the Defendants' motion for summary judgment on the basis that Meyers has failed to introduce evidence creating a genuine issue of material fact as to whether she would have been discharged even absent her allegedly protected conduct, the Court does not reach the constitutional question of whether Meyers was discharged improperly for engaging in First Amendment freedoms.

DISCUSSION

A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if:
the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial  whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." McNeil v. Aguilos, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P.56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. See Pollis v. New School for Social Research, 829 F.Supp. 584, 586 (S.D.N.Y.1993), citing Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (other citations omitted). Rather, the responding party must show the existence of a disputed material fact in light of the substantive law. See Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See McNeil, 831 F.Supp. at 1082, citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam) (other citations omitted). See also Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2d Cir.1991), citing Knight v. U.S. Fire Ins. Co., 804 F.2d 9 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (other citations omitted).

B. The Mount Healthy Defense

For the purposes of this motion, the Defendants concede that Meyers's donation to a party in a case in which she sat as a court assistant constitutes an exercise of her First Amendment rights to freedom of speech, association and religion. The Defendants argue, however, that Meyers is not entitled to relief because she would have been dismissed based on her performance record even absent her allegedly protected First Amendment conduct. In response, Meyers points to the timing of her discharge as evidence of her claim that she was fired in retaliation for exercising her First Amendment rights. Meyers argues that before making the donation she received only one performance evaluation and it concluded that eventually she might be an asset to the court. She claims that her job performance was satisfactory, but that the Defendants collaborated to evaluate her three months early so that they *136 could discharge her after she made the donation.
The Supreme Court has held that, even though protected First Amendment conduct was a "substantial factor" in an actual decision not to rehire, the decision does not necessarily amount to a constitutional violation justifying remedial action. See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 575. The proper test places on the plaintiff the initial burden of showing that an employee's conduct was constitutionally protected and that it was a "substantial factor" in the employment decision. Once the plaintiff has met that burden, however, the burden shifts to the defendant who must show that it would have reached the same decision in the absence of the protected conduct. See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 575; White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993).
In Mt. Healthy, a nontenured teacher brought an action for reinstatement claiming that the school district's refusal to rehire him violated his First Amendment rights. The teacher had been involved in several quarrels with students, school employees and other teachers, in which he used profanity or obscene gestures and which resulted in his temporary suspension. The last in the series of incidents involved protected First Amendment conduct. The teacher had called a local radio station and published the contents of a memorandum regarding a proposed dress code. One month later, the superintendent made his customary annual recommendations to the Board for rehiring of nontenured teachers. He did not recommend Doyle, citing a lack of tact in handling professional matters and referring to the radio station incident and the obscene gestures. The District Court held that the teacher was entitled to reinstatement and the Court of Appeals affirmed.
The Supreme Court remanded. It rejected a test focusing solely on whether protected conduct was a "substantial factor" in an employment decision because that test could place an employee in a better position as a result of the employee's exercise of his constitutional rights:
[t]he difficulty with the rule enunciated by the District Court is that it would require reinstatement in cases where a dramatic and perhaps abrasive incident is inevitably on the minds of those responsible for the [employment] decision ..., and does indeed play a part in that decision even if the same decision would have been reached had the incident not occurred.
Mt. Healthy, 429 U.S. at 285, 97 S.Ct. at 575. The Court explained that the constitutional principle at stake would be sufficiently vindicated if an employee were placed in no worse a position than if he had not engaged in the conduct:
A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision ... on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.
Id., 429 U.S. at 286, 97 S.Ct. at 575.
Here, the Defendants argue that Meyers was discharged on the basis of her performance record and that her protected conduct simply made them more certain of the correctness of their decision. As evidence that Meyers would have been discharged on the basis of her performance record, the Defendants point to written notes and memoranda, and deposition testimony, including: (1) Berghorn's evaluation in June of 1992 in which he cited her organizational problems and difficulties in calling the court's calendar; (2) Steinberg's and Berghorn's undated, handwritten notes listing problems with Meyers's work, which they claim were written before Meyers made the donation; (3) a memorandum from Berghorn to D'Alessio, dated August 12, 1992, in which he memorializes the prior day's meeting with Steinberg and Meyers regarding Meyers's problems in the courtroom; (4) deposition testimony of Cariello in which she states that a draft of the performance evaluation was completed *137 before Meyers made the donation and that she did not ask Felice Flax, Meyers's supervisor from the traffic division, to participate in Meyers's performance evaluation because Flax had been on vacation during most of the three weeks that Meyers had been working there; (5) the Sept. 17, 1992, performance evaluation in which discharge was recommended; (6) a memorandum from Cariello to Susan Newman, the senior administrative assistant, dated October 1, 1992, detailing all of Meyers's problems and recommending that she be terminated; and (7) a memorandum from Cariello to the Chief Judge in which she states:
As you are aware we were very unhappy with her performance in the Civil Courtroom and transferred her to Traffic Court. After a week of training in the traffic part, she was still unable to handle the part by herself. If the donation she made was the only mistake, I would be willing to try again. However, her lack of common sense and refusal to follow instruction leads me to believe that similar incidents will occur. These are the type of things that you cannot foresee, but can turn a case one way or the other. The next incident may even be worse. Since we have already given Anne several chances to conform to no avail, I suggest we terminate her at the earliest possible date.
In response, Meyers makes several arguments, none of which create a genuine issue of material fact precluding summary judgment. She argues first that the timing of her discharge is the worst evidence against the Defendants. Meyers made the donation on Sept. 8. Her performance evaluation was completed and she was informed of her discharge, effective Oct. 21, on Sept. 17. She claims that the August meeting with Berghorn and Steinberg did not occur, and thus, that she only received one mixed performance evaluation before the donation.
At best, however, the timing evidence establishes only that Meyers did not have notice of the Defendants' opinion as to the quality of her work or that Meyers's protected conduct was a "substantial factor" in the decision to discharge Meyers. Whether Meyers had notice, however, is not a material fact. Because she was a probationary employee she was not entitled to notice. The Rules of the Chief Judge provide that "[i]f the conduct or performance of a probationer is not satisfactory, his or her employment may be terminated at any time after eight weeks." (emphasis added). Moreover, in Mt. Healthy, the Court specifically stated that an employee's protected conduct cannot prevent her employer from assessing her performance record and reaching an employment decision based on that record. Mt. Healthy, 429 U.S. at 286, 97 S.Ct. at 575.
Even if the timing evidence did establish that Meyers's protected conduct was a "substantial factor" in the decision to discharge her, it is not probative of the next step in the Mt. Healthy defense on which the Defendants have moved for summary judgment  whether the Defendants would have decided to discharge her anyway based upon her performance record.
With regard to that issue, Meyers points only to her own deposition testimony in which she claims that her performance was satisfactory, and to the deposition of Felice Flax, her supervisor in the traffic division, who testified that Meyers performance was average and that she would not have recommended that Meyers be discharged.
Meyers's own evaluation of her work, however, is not probative of the Defendants' evaluation of her performance. The question is whether her employers would have discharged Meyers based on her performance record. Thus, Meyers's subjective evaluation of her own work is immaterial. The issue is not whether Meyers viewed her work as satisfactory, but whether her employers did.
Felice Flax's deposition testimony provides the only evidence of satisfactory performance by Meyers. Flax's testimony that Meyers performed satisfactorily in the traffic division is not significantly probative, however, of whether Meyers would have been discharged based on her performance record absent the protected conduct. Meyers's performance evaluation and recommendation for discharge was based on her three months of work in the landlord/tenant division. Berghorn, Meyers's supervisor in the landlord/tenant division, completed the evaluation on Sept. *138 17, just three weeks after Meyers was transferred to the traffic division. Flax did not participate in the evaluation. According to Cariello, Flax was not asked to participate because she had been on vacation during the three weeks that Meyers worked in the traffic division.
Meyers has not submitted any evidence that anyone supervising the three months of work on which her performance evaluation was based found it satisfactory. The Defendants, in contrast, have offered considerable testimony and documentary evidence that her performance was not satisfactory. For example, Berghorn and two non-party witnesses who observed Meyers's performance in the landlord/tenant division, Steinberg and D'Alessio, have all testified that Meyers's work was unsatisfactory in one respect or another.
In conclusion, although Meyers has submitted some evidence in opposition to the Defendants' motion, it is not significantly probative so as to forestall summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted). Because it is clear from the record before the Court that Meyers would have been discharged on the basis of her performance record even absent her protected conduct, the Defendants' motion for summary judgment is granted.
SO ORDERED.