**Ellamarie DeLORETO et al., Plaintiffs,**

v.

**Aaron MENT and Robert D. Coffey, Defendants.**

**No. 3:96 CV 00859(GLG).**

United States District Court, D. Connecticut.

Aug. 2, 1996.

John R. Williams, New Haven, CT, for Plaintiffs.

Richard Blumenthal, Attorney General, State of Connecticut by Carolyn Kyle Querijero, David M. Teed, Henry S. Cohn, Hartford, CT, for Defendants.

## OPINION

GOETTEL, District Judge.

Defendants have moved this Court to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P., on the following grounds:

(1) Eleventh Amendment immunity;

(2) Abstention;

(3) Failure to state a claim upon which relief can be granted;

(4) Qualified immunity; and

(5) Mootness.

For the reasons set forth below, Defendants' Motion (Doc. # 6) is GRANTED IN PART AND DENIED IN PART.

### The Facts

Plaintiffs are eleven former employees of the State of Connecticut Judicial Department employed most recently as Deputy Clerks in Geographical Area Courts in the State of Connecticut. On March 29, 1996, each Plaintiff was terminated from his or her employment. Defendant Ment is a Judge and the Chief Court Administrator of the State of Connecticut, and Defendant Coffey is the Director of the Human Resource Management Unit of the State Judicial Branch.

Plaintiffs allege that Defendants "deliberately and intentionally chose to terminate persons occupying positions staffed primarily by females, primarily by persons over the age of 40, and primarily by persons who are perceived to be union activists and leaders among the clerical staff." At oral argument, we were advised that all persons occupying the position of Deputy Clerk were terminated, and that the named Plaintiffs in this action are eleven of those terminated. Thus, they claim that each of the Plaintiffs was terminated because of his or her position as a Deputy Clerk, a job classification that was eliminated by Defendants because it was staffed primarily with women, with persons

over 40 years of age, and with union activists, although Plaintiffs concede that not all of the Plaintiffs are women or over 40.

Plaintiffs allege that Defendants failed to afford Plaintiffs proper notice, a hearing, and other procedural rights prior to their termination. They further allege that Defendants have since embarked on a program to hire persons who are disproportionately male and younger than Plaintiffs and who are not perceived as being union activists.[1] They claim that these new hires are being paid, in many instances, higher salaries than Plaintiffs were receiving at the time they were terminated.

Plaintiffs have brought this civil rights action under section 1983 of Title 42 of the United States Code.[2] They assert that their termination by Defendants violated their constitutional rights to procedural due process and equal protection under the Fourteenth Amendment, and their First Amendment rights to freedom of speech and freedom of association. They also contend that their termination by Defendants violated Connecticut's Fair Employment Practices Act, C.G.S.A. § 46a–60 *et seq.*, and state common-law by intentionally inflicting extreme emotional distress on Plaintiffs.

Plaintiffs seek as relief compensatory damages, punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1988, and a temporary and permanent injunction requiring Defendants to reinstate Plaintiffs with full back pay and benefits, and for such other relief as this Court should consider fair and equitable.

Plaintiffs allege that, at all times relevant to their Complaint, Defendants were acting in their official capacities. Plaintiffs allege specifically in their Complaint, however, that they are suing Defendants in their official capacities only as to Plaintiffs' request for injunctive relief and attorney's fees; they are sued in their individual capacities with respect to Plaintiffs' demand for compensatory

and punitive damages, as well as their request for attorney's fees.

### The Law

The function of a motion to dismiss is to test the legal sufficiency of a complaint, not to assay the weight of the evidence which might be offered in support thereof. *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984), *aff'd after remand*, 865 F.2d 492 (2d Cir.1989). When deciding a motion to dismiss, we are required to accept all well-pleaded allegations of the complaint as true and draw all reasonable inferences in favor of the Plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### Abstention

Although not the first issue raised by Defendants, we initially address their abstention argument, as our decision on this issue could obviate the need to reach the remaining issues. Defendants assert that the abstention doctrine, as set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, bars this action in its entirety.

Based upon the Affidavit of William F. Risley, Manager of Labor Relations for the Connecticut Judicial Branch, filed in conjunction with their Motion to Dismiss, Defendants state that, several weeks before the present action was filed with this Court, Plaintiffs initiated grievance procedures through their union, raising some of the same issues that are involved in this action. Three grievances were filed. Two have been denied,[3] and we were advised at oral argu-

---

**1.** At least three of the Plaintiffs, however, have been rehired to the position of Deputy Clerk.

**2.** Plaintiffs also cite sections 1981 and 1985 of Title 42 in their Complaint. As they conceded at oral argument, section 1981 does not apply in this case, as Plaintiffs do not allege discrimination on the basis of race or national origin. They

have further conceded that section 1985 does not apply to the facts of this case. Therefore, we GRANT Defendants' Motion to Dismiss Plaintiffs' section 1981 and 1985 claims.

**3.** On April 9, 1996, AFSCME Local # 749 filed a grievance alleging that the Judicial Branch eliminated job classifications primarily held by wom-

ment that the union is pursuing arbitration at least as to one and possibly both; the third is still pending. They further assert that the Plaintiffs' union filed a grievance with the Connecticut State Board of Labor Relations raising issues that are also present in this case.[4] The union has also filed a federal action against the State, and the Plaintiffs have sued their union in this Court alleging violations of federal labor statutes.

Citing the seminal case of *Younger v. Harris,* they claim that federal courts should abstain from deciding a case that would interfere with pending proceedings in state courts or state administrative agencies. Whether to abstain, they argue, turns on three critical issues: (1) whether the federal plaintiff has a full and fair opportunity to litigate his or her constitutional claim; (2) whether the agency's procedure is judicial in nature; and (3) whether the state administrative proceedings vindicate important state interests. *See Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 429, 102 S.Ct. 2515, 2519–20, 73 L.Ed.2d 116 (1982); *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Cullen v. Fliegner,* 18 F.3d 96, 103–04 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 480, 130 L.Ed.2d 393 (1994). All of these factors, they claim, are met in this case.

Plaintiffs retort that *Younger* abstention is not appropriate when the only ongoing state proceeding is a labor arbitration under a collective bargaining agreement, citing *AFSCME v. Tristano,* 898 F.2d 1302, 1304 (7th Cir.1990). Further, they assert that abstention is contrary to the public policy articulated in Connecticut's General Statutes, which in section 31–51bb provides:

No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the ... federal constitution ... solely because the employee is covered by a collective bargaining agreement.

Lastly, they object to our consideration of matters outside the record in ruling on the motion to dismiss.

■ We do not find the Connecticut statute cited by Plaintiffs dispositive of the abstention issue. The purpose of that statute was to overturn a Connecticut Supreme Court decision, *Kolenberg v. Board of Education,* 536 A.2d 577, 206 Conn. 113, *cert. denied,* 487 U.S. 1236, 108 S.Ct. 2903, 101 L.Ed.2d 935 (1988), that required a plaintiff covered by a collective bargaining agreement to exhaust all grievances and arbitration procedures before pursuing any statutory remedies. *Genovese v. Gallo Wine Merchants, Inc.,* 628 A.2d 946, 949, 226 Conn. 475, 481 (1993). This statute does not control whether a federal court should abstain from hearing a case involving plaintiffs who are covered by a collective bargaining agreement.

■ Further, we do not agree with Plaintiffs that we cannot consider matters outside the pleadings in ruling on Defendants' abstention argument. Consideration of a motion to dismiss on abstention grounds is akin to a motion to dismiss for lack of subject matter jurisdiction, in which a court is not restricted to the face of the pleadings, but may review affidavits and other evidence to resolve factual disputes concerning its jurisdiction to hear the action. 2A *Moore's Federal Practice* ¶ 12.07[2.–1]. To adopt Plaintiffs' position would require us, in considering whether to abstain from hearing this case, to ignore pending state or administra-

---

en and sought as relief reinstatement and make-whole relief. This grievance was denied. That same day, it filed another grievance containing the same allegations but adding the claim that the Judicial Branch had laid off employees due to their bargaining unit affiliation. It appears that this grievance is still pending. The third grievance filed by the union alleged that the Judicial Branch had replaced laid off bargaining unit employees with temporary employees not covered by the Agreement. This grievance was also denied.

4. This complaint, filed April 4, 1996, alleges that the State of Connecticut violated Connecticut's Collective Bargaining for State Employees Act by refusing to provide information necessary for impact bargaining regarding layoffs; by not meeting with the union before layoffs; by incorrectly calculating seniority for the purpose of layoff order; by hiring temporary employees after laying off permanent employees; and by bargaining in bad faith.

tive proceedings, unless specifically pled by Plaintiffs in their Complaint. This would clearly be unwarranted and contrary to the teachings of *Ohio Civil Rights Commission v. Dayton Christian Schools,* 477 U.S. at 627, 106 S.Ct. at 2722–23, and *Christ the King Regional High School v. Culvert,* 815 F.2d 219, 223 (2d Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987). The only affidavit before this Court is the affidavit of William Risley, which we consider only with respect to the abstention issue.

■ In considering whether abstention is appropriate, we begin with the proposition that only under "exceptional circumstances" may federal courts eschew their duty to exercise jurisdiction over all cases properly before them. *Colorado River Conservation District v. United States,* 424 U.S. 800, 813, 817–18, 96 S.Ct. 1236, 1244, 1246–47, 47 L.Ed.2d 483 (1976). However, in *Younger v. Harris,* the Supreme Court enunciated the principle that, where there is an ongoing state criminal proceeding, a federal court should abstain from enjoining the criminal proceeding except in the very unusual situation where an injunction was necessary to prevent great and immediate irreparable injury. The Supreme Court based their decision on traditional concerns for comity and federalism. *Younger* has since been extended to other proceedings, including civil proceedings in which important state interests are involved, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), and state administrative proceedings in which important state interests are vindicated, so long as in the course of these proceedings the federal plaintiff would have a full and fair opportunity to litigate his or her constitutional claims. *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). In *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), the Supreme Court applied *Younger* to require abstention by a federal court asked to enjoin state administrative civil rights proceedings brought by a terminated teacher. Dayton Christian Schools claimed that these proceedings violated its First Amendment rights.

While neither the Supreme Court nor the Second Circuit has directly addressed the issue of whether *Younger* abstention is appropriate in federal cases in which only money damages are sought, *Deakins v. Monaghan,* 484 U.S. 193, 202, n. 6, 108 S.Ct. 523, 529–30, n. 6, 98 L.Ed.2d 529 (1988), a recent decision of the Second Circuit addressed the question of whether abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is applicable only in cases seeking equitable relief. The Second Circuit held that, except possibly "in highly unusual circumstances, not now foreseeable," abstention is generally appropriate only in cases where equitable relief is sought. *Tribune Co. v. Abiola,* 66 F.3d 12, 16 (2d Cir.1995).

While *Tribune Co.* involved abstention under *Burford* rather than *Younger,* the Second Circuit's decision was based in large part on its reading of the Supreme Court's decision in *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("NOPSI"), in which the Supreme Court, discussing both *Burford* and *Younger,* carefully traced the origin of abstention doctrines to the federal courts' discretion to withhold equitable relief. *NOPSI,* 491 U.S. at 359, 109 S.Ct. at 2513–14.

In *NOPSI,* the Supreme Court, quoting *Younger,* held that "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do'." 491 U.S. at 359, 109 S.Ct. at 2513. Nevertheless, the Supreme Court emphasized that abstention remains the "exception, not the rule" and that a federal court's obligation to adjudicate claims within its jurisdiction was "virtually unflagging." *Id.* (citations omitted).

The instant case arises in a different context than the vast majority of cases in which

the *Younger* abstention doctrine has been applied. In this case, Plaintiffs are not asking this Court to enjoin any state proceedings, *see, e.g., Doe v. State of Conn., Dept. of Health Services,* 75 F.3d 81 (2d Cir.1996); *Christ the King Regional High School v. Culvert, supra,* or to declare unconstitutional any state procedures or laws involved in the proceedings. *See, e.g., Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Younger, supra.* Plaintiffs have brought a civil rights action for garden-variety money damages resulting from their terminations allegedly in violation of their constitutional rights. They do not seek to overturn the dismissals of two of the grievances; they do not seek a declaratory judgment with respect to the grievance that remains pending.

Thus, while not going so far as to hold that there never would be a money damages case in which *Younger* abstention would be appropriate, we decline to abstain in this case on Plaintiffs' claims for monetary relief.

■ Plaintiffs also seek injunctive relief in the form of reinstatement. With respect to this claim, we must address the three factors set forth above, which have been applied by the courts in determining whether abstention under *Younger* is appropriate. With respect to the pending labor complaint, the issues are sufficiently different that abstention is not required. The labor complaint revolves around the parties' collective bargaining agreement and does not raise the First Amendment and equal protection claims asserted in this case. *See AFSME v. Tristano,* 898 F.2d at 1305.

■■ The union grievances, on the other hand, raise issues of sex discrimination, but they do not raise the remaining constitutional issues asserted in this case. It is also not clear on the record before us on behalf of which groups of employees these grievances were filed. They very well may have encompassed other job classifications in addition to Deputy Clerk. While the parties at oral argument disagreed as to whether constitutional issues could first be raised on appeal, the case law in Connecticut seems well-settled that the court's authority in reviewing an arbitration award is confined to the issues

arbitrated. *Daley v. City of Hartford,* 574 A.2d 194, 215 Conn. 14, *cert. denied,* 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990). Thus, we do not find that the Plaintiffs will necessarily have a full and fair opportunity to litigate their constitutional claims through the union grievance procedures. Additionally, we have found no case (and the parties cited have not cited any such case) in which a court has applied *Younger* to require abstention in a civil rights case, either under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* or under section 1983, where there was also a union grievance proceeding pending, and the only injunctive relief sought by the plaintiff was prospective reinstatement.

■ Lastly, we note that there is no requirement in state or federal law that requires Plaintiffs to exhaust their grievance and arbitration procedures before filing a section 1983 suit. *See Patsy v. Board of Regents of State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Genovese v. Gallo Wine Merchants, supra.*

While we are sensitive to the important state interests involved in this litigation, based on what we understand the defenses to be, we do not find that this case is an appropriate one in which to apply the *Younger* abstention doctrine.

Therefore, we DENY Defendants' Motion to Dismiss Plaintiff's Complaint on the basis of the abstention doctrine.

### Eleventh Amendment Immunity—Official Capacity Claims

■ Section 1983 of Title 42 authorizes the imposition of liability against "[e]very person" who, acting under color of state law, violates another person's federally protected rights. The Supreme Court in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), has made clear that neither State agencies nor State officials acting in their official capacities are "persons" under section 1983. Thus, to the extent that the Defendants have been sued in their official capacities for damages and retrospective relief under section 1983, they are not "persons" subject to section 1983 liability.

1 M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 5.2 (2d ed. 1991).

■ Additionally, the Eleventh Amendment bars federal courts from entertaining suits brought by a private party against an unconsenting State and its agencies. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 339, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The Eleventh Amendment immunity to which a State official is entitled in a section 1983 suit depends on the capacity in which he is sued, that is whether he is sued in his official capacity or his individual capacity. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). In an official capacity suit seeking money damages against a State official, the State is deemed to be the real party in interest because an award of damages would be paid from the State Treasury. *Hess v. Port Authority Trans–Hudson Corporation*, 513 U.S. 30, ——–——, 115 S.Ct. 394, 404–05, 130 L.Ed.2d 245 (1994). Therefore, to the extent that a State official is sued in his official capacity, such a suit is deemed to be a suit against the State, and the official is entitled to invoke the same Eleventh Amendment immunity as that belonging to the State. *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993).

■ However, the Supreme Court has held that the Eleventh Amendment does not bar actions against a State official alleging a violation of federal law, where the plaintiff seeks as an award an injunction that governs the official's future conduct. *Edelman v. Jordan*, 415 U.S. at 666–67, 94 S.Ct. at 1357–58.

■ Plaintiffs assert that they are only suing Defendants in their official capacities in seeking injunctive relief reinstating them to the jobs from which they were terminated.

They claim that the Eleventh Amendment does not bar their request for reinstatement against the Defendants in their official capacities, citing *Cross v. State of Alabama*, 49 F.3d 1490 (11th Cir.1995). The critical inquiry with respect to Plaintiffs' official capacity claims against these Defendants is whether they are considered claims for prospective injunctive relief or retrospective relief. In this case, Plaintiffs seek a "temporary and permanent injunction requiring the defendants forthwith to reinstate the plaintiffs to their former positions with full back pay and benefits." This injunctive relief of reinstatement could only be awarded against Defendants in their official capacities. Clearly, in their individual capacities they have no authority to reinstate Plaintiffs. The Second Circuit has repeatedly held that reinstatement is purely prospective injunctive relief and that an order that reinstatement be granted is the sort of prospective relief that is not barred by the Eleventh Amendment. *Russell v. Dunston*, 896 F.2d 664, 668 (2d Cir.), *cert. denied*, 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990); *Dwyer v. Regan*, 777 F.2d 825, 827–28 (2d Cir.1985), *as modified by* 793 F.2d 457 (2d Cir.1986); *see also Cross v. State of Alabama, supra; Treleven v. University of Minnesota*, 73 F.3d 816 (8th Cir. 1996); *Warnock v. Pecos County, Texas*, 88 F.3d 341 (5th Cir.1996); *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584 (10th Cir.1994); *Shane v. State of Connecticut*, 821 F.Supp. 829, 832 (D.Conn.1993).

■ Plaintiffs' claims for back pay and benefits are separate forms of relief. Back pay is clearly a claim for money damages that would be barred by the Eleventh Amendment against Defendants in their official capacities,[5] *Dwyer v. Regan*, 777 F.2d at 829, and Plaintiffs so conceded at oral argument.

■ Plaintiffs' claim for benefits is more difficult to classify. It is unclear whether they are seeking reinstatement of future benefits, retroactive reinstatement of

---

**5.** Similarly, Plaintiffs would have no claim against Defendants in their individual capacities for backpay and benefits, since Defendants had no duty in their individual capacities to pay Plaintiffs' salary or benefits. *See Dwyer v. Regan, supra*, 777 F.2d at 836. However, this does not affect Plaintiffs' right to attempt to prove other compensatory damages against them.

benefits, or money damages for the value of the benefits lost. To the extent that they are simply seeking prospective reinstatement of benefits, this claim would not be barred by the Eleventh Amendment, *Shane v. State of Connecticut,* 821 F.Supp. at 832; to the extent they are seeking retroactive reinstatement or money damages for lost benefits, such a claim would be barred under the principles outlined above. *Sauceda v. Department of Labor & Industries,* 917 F.2d 1216, 1218 (9th Cir.1990).

Thus, we find that Plaintiffs' claims against Defendants in their official capacities for prospective reinstatement are not barred by the Eleventh Amendment, as well as their claim for attorney's fees and costs associated therewith, as provided by section 1988. *See Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). All other official capacity claims against Defendants are barred by the Eleventh Amendment. Thus, Defendants' Motion to Dismiss Plaintiffs' official capacity claims is GRANTED IN PART AND DENIED IN PART.

### Qualified Immunity—Individual Capacity Claims

Our ruling with respect to the official capacity claims on the Eleventh Amendment, however, does not affect Plaintiffs' claims against Defendants in their individual capacities.

■■■ Defendants assert in their motion to dismiss that, as to Plaintiffs' claims against them in their individual capacities, they are entitled to qualified immunity with respect to the administrative decision to lay off Plaintiffs.

■■■ In a section 1983 action, qualified immunity shields an official sued in his individual capacity "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or even, where the rights were clearly established, if it was objectively reasonable for the official to believe that his acts did not violate those rights. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97

L.Ed.2d 523 (1987); *see also Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992); *Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities,* 64 F.3d 810, 815–16 (2d Cir.1995). Defendants assert that Plaintiffs have failed to allege the violation of any clearly established law and, therefore, Defendants' acts are protected by the doctrine of qualified immunity. We disagree.

Plaintiffs have alleged that Defendants intentionally and deliberately selected their position of Deputy Clerk for elimination because of the high concentration of women, persons over 40, and union activists. Termination of a public employee because of his or her union activities, because of her gender, or because of age would violate the individual's constitutional and federal statutory rights. Defendants have denied making their personnel lay-off selections on this basis, creating a critical factual issue in dispute.

Therefore, we cannot hold at this juncture that Defendants are entitled to invoke qualified immunity as a defense to Plaintiffs' claims against them in their individual capacities. Defendants' Motion to Dismiss Plaintiffs' claims against them in their individual capacities on qualified immunity grounds is DENIED.

### Plaintiff's Failure to State a Claim

Defendants next seek to have this Complaint dismissed for failure to state a claim upon which relief can be granted. Citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), Defendants argue that, because this is a civil rights complaint, and in particular, because Defendants have raised the defense of qualified immunity, heightened pleading requirements apply and that Plaintiffs' "merely conclusory" allegations are plainly insufficient.

To properly state a claim under section 1983, Plaintiff must allege that (1) he was deprived of a right secured by the Constitution and laws of the United States; and (2) the deprivation was committed by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–

55, 101 L.Ed.2d 40 (1988). As the Supreme Court has repeatedly held, "section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

Plaintiffs have met the requirement of alleging that the Defendants were acting under color of state law, and Defendants do not contend otherwise. The more difficult issue is whether they have adequately alleged the deprivation of a right secured by the Constitution and laws of the United States. Plaintiffs allege a deprivation of their rights to Equal Protection based on their alleged discriminatory termination; a denial of their right to freedom of association and freedom of speech under the First Amendment based on their termination due to their union activities; and a violation of their right to procedural due process under the Fourteenth Amendment. We treat each of these separately.

### Equal Protection

The Second Circuit has held that an employment discrimination plaintiff alleging the violation of a constitutional right may bring suit under section 1983 alone, and is not required to plead concurrently a violation of Title VII. *Annis v. County of Westchester*, 36 F.3d 251 (2d Cir.1994). In *Annis*, the Court reiterated the holding of *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271–72, 60 L.Ed.2d 846 (1979), that individuals have a constitutional right under the equal protection clause to be free from sex discrimination in public employment. *Annis*, 36 F.3d at 254. Similarly, discrimination on the basis of age may serve as the basis for a section 1983 equal protection claim, although age is not a suspect classification and requires only a showing of a rational basis. *See Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *Spain v. Ball*, 928 F.2d 61 (2d Cir. 1991).

As Defendants correctly point out, the Second Circuit, along with the other circuits, has imposed upon a section 1983 plaintiff a "heightened" pleading requirement, particularly where qualified immunities are involved, requiring Plaintiffs to plead more than conclusory allegations. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988); *Fonte v. Board of Managers*, 848 F.2d 24 (2d Cir. 1988); *Barr v. Abrams*, 810 F.2d 358 (2d Cir.1987). Nevertheless, we find that Plaintiffs have adequately set forth the elements of a cause of action under section 1983 with respect to their Equal Protection claims. The Complaint has provided Defendants with sufficient notice to frame an answer. It alleges specific conduct that violated their rights to equal protection, the time and place of the conduct, and the identity of the official who engaged in the conduct. *See* 1 M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 1.6 (2d ed. 1991).

Defendants argue that Plaintiffs are improperly relying on a disparate impact analysis, which cannot serve as the basis for a section 1983 claim. We disagree that Plaintiffs' Complaint as now framed relies on a disparate impact analysis.[6] Plaintiffs are alleging that Defendants intentionally eliminated an entire job classification based on impermissible criteria, *i.e.* sex, age, and union activities, and that as a result, their jobs were eliminated and they were injured. This is not a case where the Plaintiffs are challenging a facially neutral employment practice, such as a scored written test, a height requirement, a high school diploma requirement, on the ground that it has an adverse impact on a protected group. Instead, Plaintiffs are alleging that "defendants *deliberately and intentionally chose to terminate persons occupying positions staffed primarily*

---

**6.** We note, however, that at oral argument, Defendants' counsel asserted that particular job classifications had been chosen for elimination based on budgetary criteria and factors concerning which jobs could be eliminated. If, indeed, it develops that Plaintiffs must rely on a disparate impact analysis (and, at this juncture, we have no information as to whether the layoffs did, in fact, disproportionately impact on any particular groups of employees, such as women or persons over 40), we have serious reservations as to whether Plaintiff will be able to state a cause of action under section 1983. *See Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). However, that issue is not before us on Defendants' Motion to Dismiss.

*by females, primarily by persons over the age of 40, and primarily by persons who were perceived to union activists and leaders among the clerical staff."* That is not an adverse impact theory of discrimination. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–36, 97 S.Ct. 1843, 1854–55, 52 L.Ed.2d 396 (1977); *International Union, UAW v. Johnson Controls, Inc.,* 499 U.S. 187, 199, 111 S.Ct. 1196, 1203–04, 113 L.Ed.2d 158 (1991); *Healey v. Southwood Psychiatric Hospital,* 78 F.3d 128, 131–32 (3d Cir.1996).

Accordingly, Defendants' Motion to Dismiss Plaintiffs' Equal Protection claims under section 1983 is DENIED.

We note, however, that Plaintiffs have also included in their Complaint vague and conclusory allegations of conspiracy. The Second Circuit has repeatedly required specific factual allegations to support conspiracy claims and has rejected such vague and conclusory allegations. *See Leon v. Murphy,* 988 F.2d 303 (2d Cir.1993); *Polur v. Raffe,* 912 F.2d 52 (2d Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991); *Sykes v. James,* 13 F.3d 515 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994). Therefore, to the extent that Plaintiffs intend to rely on a conspiracy claim, we GRANT Defendants' Motion to Dismiss as to this claim without prejudice to Plaintiffs' repleading these allegations with greater specificity.

### Procedural Due Process

The question of whether Plaintiffs were deprived of procedural due process depends on whether, within the meaning of the Due Process Clause, Plaintiffs had a property interest in their positions as Deputy Clerks, and whether due process required a hearing prior to the deprivation. *Dwyer v. Regan, supra,* 777 F.2d at 829. Plaintiffs do not allege on what basis they are claiming a property interest. We were advised at oral argument that they are claiming this by virtue of Connecticut's civil service system and their rights under their union contract. However, nothing is alleged in this regard. Additionally, Plaintiffs do not allege to what procedural due process rights they are claim-

ing entitlement. We do not believe that Plaintiffs have set forth a section 1983 cause of action with respect to their procedural due process claims, and we GRANT Defendants' Motion to Dismiss without prejudice to Plaintiffs' right to replead their Fourteenth Amendment procedural due process claims under section 1983.

### First Amendment Freedom of Speech and Freedom of Association

Plaintiffs also seek to vindicate their First Amendment right of freedom of speech and freedom of association in their section 1983 claim against Defendants for allegedly eliminating their job classification, and thus terminating them, because of the number of union activists in their job category. The First Amendment protects the rights of employees to associate and participate in labor unions. *Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 464, 99 S.Ct. 1826, 1827–28, 60 L.Ed.2d 360 (1979). A state employer may not retaliate against an individual, such as by terminating his or her employment, because of his or her union activities. *Id.* at 465, 99 S.Ct. at 1828; *Henderson v. Huecker,* 744 F.2d 640, 644–45 (8th Cir.1984); *Stellmaker v. DePetrillo,* 710 F.Supp. 891 (D.Conn.1989). The courts have repeatedly held that discrimination against public employees because of their union membership is actionable under section 1983. *See, e.g., Thomas v. Younglove,* 545 F.2d 1171 (9th Cir.1976); *Lontine v. VanCleave,* 483 F.2d 966 (10th Cir.1973); *Orr v. Thorpe,* 427 F.2d 1129 (5th Cir.1970).

Plaintiffs have sufficiently alleged a violation of their First Amendment right to freedom of association. We cannot hold at this early stage of the litigation that Plaintiffs can prove no set of facts which would entitle them to relief. *Conley v. Gibson, supra.* Therefore, we DENY Defendants' Motion to Dismiss Plaintiff's section 1983 First Amendment freedom of association claims.

With respect to Plaintiffs' freedom of speech claims, however, Plaintiffs have failed to allege any statements that resulted in their termination; that the statements were matters of public concern; that the

constitutionally protected speech was a substantial or motivational factor in the employer's actions; and that the interests of the Plaintiffs in commenting on a matter of public concern outweigh the state's interests in maintaining efficient public service. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Swineford v. Snyder County Pa.*, 15 F.3d 1258 (3d Cir.1994); *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir.1990), *cert. denied*, 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991); *Meyers v. Simons*, 896 F.Supp. 132 (S.D.N.Y.1995). These are required elements of a section 1983 freedom of speech cause of action. Therefore, we find that Plaintiffs have failed to allege a cause of action for which relief can be granted under section 1983 for violation of their First Amendment right of freedom of speech. Accordingly, we GRANT Defendants' Motion to Dismiss this claim in Plaintiffs' Complaint again without prejudice to Plaintiffs' right to replead this claim in an amended complaint.

### Mootness

■ Defendants next argue that some of the Plaintiffs have been rehired and, therefore, their claims are moot. We disagree. While their rehiring would obviously moot their demands for reinstatement, and Plaintiffs' counsel so concedes, it does not moot their claim for damages. Therefore, we DENY Defendants' Motion to Dismiss on this basis.

### State Law Claims

Lastly, Defendants ask us to dismiss Plaintiffs' state law claims under Connecticut's Fair Employment Practices Act, C.G.S.A. § 46a–60 *et seq.* ("CFEPA"), and for intentional infliction of emotional distress. Section 1367 of Title 28 provides in relevant part:

(a) Except as provided in subsection ... (c) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution. . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367. Thus, under section 1367, we have the discretion to exercise supplemental jurisdiction over the state-law claims or to decline to do so.

### Connecticut's Fair Employment Practices Act

■ Section 46a–60 prohibits discriminatory employment practices based on, *inter alia*, age and sex. A complaint under section 46a–60, however, must be filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). As the Connecticut Supreme Court held in *Sullivan v. Board of Police Commissioners*, 491 A.2d 1096, 196 Conn. 208 (1985),

[r]ead in its entirety, the CFEPA not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the CHRO. It is the CHRO that is charged by the act with initial responsibility for the investigation and adjudication of claims of employment discrimination.

*Id.* at 1101, 196 Conn. at 216. Thus, a party must follow the administrative procedures established by the legislature. A failure to do so results in a lack of authority to pursue such claim in court. Plaintiffs cannot circumvent the statutory administrative process by joining a claim for discrimination under the state statute with their federal constitutional claims. *See id.; Napoleon v. Xerox Corp.*, 656 F.Supp. 1120 (D.Conn.1987).

Therefore, we GRANT Defendants' Motion to Dismiss Plaintiffs' claims under Connecticut's Fair Employment Practices Act, C.G.S.A. § 46a–60 *et seq.*

### Intentional Infliction of Emotional Distress

 As for Plaintiffs' claims for intentional infliction of emotional distress, in *Koehler v. Chesebrough–Ponds, Inc.,* 705 F.Supp. 721 (D.Conn.1988), this Court concluded that the availability of an intentional infliction of emotional distress claim in the employment context "has been a subject of recent dispute in Connecticut." 705 F.Supp. at 724 (citations omitted). Although the Connecticut Supreme Court, in *Petyan v. Ellis,* 510 A.2d 1337, 200 Conn. 243 (1986), has indicated that liability may be imposed in an employment case where conduct exceeds "*all bounds* usually tolerated by decent society," 510 A.2d at 1342, 200 Conn. at 254 n. 5 (original emphasis), as this Court has noted on several occasions, the Connecticut Supreme Court has not yet defined the threshold standard for "extreme and outrageous" conduct in the employment context. *Koehler,* 705 F.Supp. at 724; *Young v. Bank of Boston Connecticut,* No. 3: 93 CV 1642(AVC) (D.Conn., Ruling on Defendants' Motion to Dismiss dated June 17, 1996). In *Young,* this Court decided that, because of the unsettled nature of the law in this area, the better course was to decline jurisdiction of the intentional infliction of emotional distress claim. The Court further found that the potential for jury confusion also warranted declining to exercise supplemental jurisdiction over this claim. We agree. Plaintiffs' state-law claim of intentional infliction of emotional distress is better left to the state courts for resolution. Accordingly, we GRANT Defendants' Motion to Dismiss Plaintiffs' state-law claim for intentional infliction of emotional distress.

### Conclusion

Accordingly, Defendants' Motion to Dismiss (Doc. # 6) is GRANTED IN PART AND DENIED IN PART. To the extent noted above, Plaintiffs are herewith granted leave to file an amended complaint within twenty (20) days from the date of this decision.

**SO ORDERED.**