SHANE

v.

**STATE OF CONNECTICUT, et al.**

**Civ. No. 3–88–129 (WWE).**

United States District Court,
D. Connecticut.

March 24, 1993.

Philip M. Halpern and Mark C. Durkin, Collier, Cohen, Shields & Bock, New York City, for plaintiff.

Margaret Q. Chapple, Atty. General's Office, Public Safety & Sp. Revenue, Hartford, CT, for defendant.

## RULING ON MOTION TO DISMISS

EGINTON, Senior District Judge.

In this action, plaintiff Shane alleges that he was unlawfully terminated from his job as a state trooper because of his race, in viola-

tion of his rights under the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985, and 1986, Article First Section One and Twenty of the Connecticut State Constitution and Article Twenty-one of the amendments thereto, Connecticut General Statute § 29–4, the internal policy rules of the State Police Department, and the State Police Contract. Defendants have moved to dismiss all counts of the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b). For the reasons set forth below, the motion will be granted in part and denied in part.

### Facts

In November 1982, Shane was hired by the Connecticut State Police Department as a state trooper. In June 1984, he voluntarily resigned from his job for personal reasons, but resumed his employment with the State Police in November 1984. As a permanent employee, plaintiff was covered by the State Police Contract and could be terminated only for just cause.

Between November 1984 and May 1985, Shane's direct supervisor was Sergeant David O'Keefe. During this period, Shane performed his job well and, in fact, O'Keefe filed several positive performance observation reports on behalf of Shane.

In May 1985, Shane was transferred to a new shift of duty and was placed under the direct supervision of Sergeant John McGran. This transfer of assignment was done without proper notice and prior to the expiration of the "bid shift cycle," in contravention of the State Police Contract. Shane sent a written request to remain under the supervision of O'Keefe, but that request was denied.

Soon after being reassigned to McGran, Shane began to experience difficulties with his superiors. McGran issued several negative personal performance observation reports against Shane, for which Shane was disciplined. In addition, McGran conducted a formal evaluation of Shane's performance between May and August 1985, after which he filed two negative Performance Evaluation Reports about Shane. Although Shane sent written requests to be transferred to his former shift and to be granted a conference

regarding the difficulties he was experiencing, these requests were denied.

In August 1985, Shane was transferred to a new shift under the supervision of Sergeant Pagoni. While on this assignment, Shane was subjected to intense scrutiny—more than that experienced by white state troopers and more than normal. Shane was required to undergo several special training sessions and accept special assignments under the abnormally high level of scrutiny from his supervisors. In addition, Pagoni issued twelve negative personal observation reports against Shane and imposed multiple disciplinary penalties against him, including loss of vacation days and suspensions.

In January 1986, Shane sent a third written request to be granted a conference on his difficulties with his supervisors. Despite the "open door policy" set forth in the State Police Contract, Shane's request was denied. Although it is the general policy of the State Police Department to conduct service evaluations every two years, and the State Police Contract provides for annual evaluations, Pagoni conducted a second evaluation of Shane in February 1986. Thus, Shane was evaluated twice in four months for a work period of only ten months.

After the second evaluation was conducted, Pagoni issued a second negative Performance Evaluation Report against Shane. Because of this report, the State Police discharged Shane. Shane was terminated without a pre-termination hearing or an opportunity to be heard in response to the charges levied against him.

Subsequently, Shane filed an administrative complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). This complaint was then filed with the Equal Employment Opportunity Commission ("EEOC"). When the EEOC failed to file a civil action, Shane requested a Right to Sue letter. In 1991, after receiving a Right to Sue letter, plaintiff brought an action under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e et seq.

During the pendency of the CHRO and EEOC complaints, Shane filed the instant action in the Federal District Court for the

District of Connecticut under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. In February 1992, this action was consolidated with the Title VII action.

## Discussion

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## Eleventh Amendment

Defendants first argue that the Eleventh Amendment to the United States Constitution bars plaintiff from seeking money damages against the State of Connecticut and defendants Lester Forst and Nicholas Cioffi in their official capacities. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has interpreted this Amendment as barring citizens from bringing actions against states for money damages, absent consent. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), *reh'g denied,* 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), *reh'g denied,* 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Plaintiff concedes that his legal and equitable claims against the State of Connecticut are barred, but contends that the Eleventh Amendment does not bar his claims against defendants Forst and Cioffi to the extent they seek prospective injunctive relief and attorneys' fees in relation thereto, or to the extent they seek money damages against Forst and Cioffi in their individual capacities. It is well established that the Eleventh Amendment does not bar an action seeking prospective injunctive relief, such as reinstatement or restoration of employment benefits against state officials in their official capacities or claims for attorneys' fees pursuant to 42 U.S.C. § 1988 asserted within the context of the action for prospective injunctive relief. *Hutto v. Finney,* 437 U.S. 678, 693–700, 98 S.Ct. 2565, 2574–78, 57 L.Ed.2d 522 (1978), *reh'g denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979); *Minotti v. Lensink,* 798 F.2d 607, 609 (2d Cir.1986), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); *Dwyer v. Regan,* 777 F.2d 825, 835–37 (2d Cir.1985), *modified, reh'g denied,* 793 F.2d 457 (1986). Likewise, the Eleventh Amendment does not prohibit an action for money damages, whether compensatory or punitive, against a state official in his individual capacity. *Dwyer,* 777 F.2d at 835–37. Thus, to the extent counts one through four of the Second Amended Complaint seek, in part, prospective injunctive relief and related attorneys' fees and costs against Forst and Cioffi in their official capacities, they are not barred by the Eleventh Amendment. Similarly, to the extent counts five through eight seek compensatory and punitive damages and attorneys' fees against Forst individually, the Eleventh Amendment does not bar relief.

## Jurisdiction Over State Law Claims

Defendants next argue that this court should decline to exercise pendent jurisdiction over counts one, three, four, and seven, to the extent they assert claims under state law. Congress recently adopted the concept of supplemental jurisdiction, which essentially codifies the principles of pendent and ancillary jurisdiction under 28 U.S.C. § 1367. Section 1367 provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties....

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State Law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Applying the test set forth in section 1367, it is clear that the exercise of pendent jurisdiction over plaintiff's state law claims is appropriate. The state law claims in this case are based on the identical facts as the federal claims and allege unlawful termination. They do not raise novel or complex issues of state law. Moreover, consideration of these claims neither expands the scope of issues nor predominates over federal claims. Accordingly, this court declines to dismiss plaintiff's state law claims pursuant to section 1367.

*Effect of Collective Bargaining Agreement*

Defendants' third argument in their motion to dismiss is that the fourth count of the Second Amended Complaint is barred by the collective bargaining agreement between the Connecticut State Police Union and the State of Connecticut—the State Police Contract. If an employee's grievance is brought before an arbitrator, Article XIV section 8(e) of the State Police Contract states that the arbitrator's decision shall be final and binding on the parties, in accordance Conn. Gen.Stat.

§ 52–418. While it is true that plaintiff's dismissal was the subject of an arbitration hearing and that an arbitrator ruled that plaintiff's dismissal was for just cause, this court finds that plaintiff's claim in count four is not barred by the arbitrator's ruling.

It is well-established that an arbitrator's decision is binding, but only as to the specific facts or issues presented and decided. *ACMAT Corp. v. International Union of Operating Engineers*, 442 F.Supp. 772, 783 (D.Conn.1977). Count four of the complaint alleges that defendants breached the State Police Contract by improperly transferring plaintiff between shifts of duty, depriving him of his right of access to meetings with the Commissioner, subjecting him to too frequent performance evaluations, and imposing unequal measures of discipline upon him. The arbitrator's ruling on plaintiff's terminations, however, only discusses whether the second performance evaluation was proper and concludes that plaintiff was terminated for just cause. The ruling does not discuss whether plaintiff was improperly transferred, wrongfully deprived access to meetings, subjected to unequal amounts of discipline, or whether evidence on these issues was presented at the hearing. Thus, the court finds that the decision of the arbitrator does not bar plaintiff's claims in count four of the Second Amended Complaint.

*Statute of Limitations*

Defendants next contend that plaintiff's claims are barred by the applicable statutes of limitations. Defendants' argument, however, must fail with respect to seven of the eight counts in the Second Amended Complaint. The first, second, fifth, and sixth counts of the complaint allege violations of plaintiff's civil rights under 42 U.S.C. §§ 1981 and 1983. All of these claims are subject to a three year statute of limitations. Conn. Gen.Stat. § 52–577; *Weber v. Amendola*, 635 F.Supp. 1527, 1531 (D.Conn.1985). Plaintiff filed the original complaint in this action on March 18, 1988, just two years after his dismissal. The fact that plaintiff filed the Second Amended Complaint after the three year period is irrelevant, because the action was commenced within the appli-

cable statute of limitations period. In addition, the claims in the Second Amended Complaint all arise out of the same wrongful termination alleged in the original complaint and, therefore, relate back to the date of the filing of the original complaint. Fed.R.Civ.P. 15(c). Thus, counts one, two, five, and six are timely.

■ Counts three and seven allege violations of Conn. Gen.Stat. § 29–4 and also are governed by a three year statute of limitations. Although these counts were added after the original complaint was filed, their date of filing relates back to the date of filing of the original complaint because they arise out of the same core of operative facts as the other causes of action in the complaint. *See* Fed.R.Civ.P. 15(c)(2); *Clipper Express v. Rocky Mountain Motor Tariff Bureau,* 690 F.2d 1240, 1259 n. 29 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). Thus, counts three and seven were timely filed.

■ Similarly, count four of the complaint was timely filed. Count four asserts breach of contract and is governed by a six year statute of limitations. Conn. Gen.Stat. § 52–576. Both the original complaint and the Second Amended Complaint in this action were filed within six years of the alleged breach.

Count eight alleges a violation of 42 U.S.C. §§ 1985 and 1986. Like counts three and seven, count eight was added after the filing of the original complaint, but arises out of the same nucleus of operative facts and relates back to the date of the original complaint. However, count eight is subject to a one year statute of limitations. Thus, even if this claim relates back to the date of the original complaint, it was filed two years after plaintiff's allegedly unlawful termination and is untimely absent a tolling of the statute of limitations.

■ Where a complaint alleges a continuing course of conduct, the statute of limitations may be tolled. *Bartha v. Waterbury House Wrecking Co.,* 190 Conn. 8, 13, 459 A.2d 115 (1983). "[D]iscreet incidents occurring during a continuum of discriminatory employment practices may constitute fresh violations of" the law. *State v. Commission on Human Rights & Opportunities,* 211 Conn. 464, 473, 559 A.2d 1120 (1989). For example, in *Board of Education v. Commission on Human Rights & Opportunities,* 177 Conn. 75, 77–78, 411 A.2d 40 (1979), female custodians alleged they were being unlawfully discriminated against because they were paid less than male custodians for the same work. The court found that the complaint properly alleged a continuing course of conduct rather than any one specific violation. In contrast, in *Scovill Manufacturing Co. v. Commission on Civil Rights,* 153 Conn. 170, 175, 215 A.2d 130 (1965), there was no continuing course of conduct, because the statute of limitations began to run on the date the plaintiff was denied employment. Similarly, in *Bartha,* where the complaint presented no facts which would reasonably support an inference of a continuing breach of duty, the statute of limitations was not tolled. 190 Conn. at 13–14, 459 A.2d 115.

Although plaintiff's complaint alleges a continuing course of conduct after his termination in 1986, he provides no facts to support this allegation. Rather, the alleged wrong was the unlawful termination of plaintiff in 1986. Therefore, the court finds that plaintiff's complaint fails to allege a continuing course of conduct sufficient to toll the statute of limitations with respect to count eight of the Second Amended Complaint. Accordingly, count eight is time-barred and must be dismissed.

### Section 1981 Claims

■ Defendants' fifth argument in their motion to dismiss contends that counts two and six of the Second Amended Complaint fail to state a claim under 42 U.S.C. § 1981 because they involve problems that arose out of the conditions of continuing employment— not out of the formation of the employment contract. Section 1981 provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." This section was interpreted to apply only to the formation of contracts, so that discriminatory conduct arising after the formation of an em-

ployment contract was not actionable under Section 1981. *Patterson v. McLean Credit Union,* 491 U.S. 164, 179–80, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989); *Gonzalez v. Home Insurance Co.,* 909 F.2d 716, 722 (2d Cir.1990).

■ The limitations imposed upon the scope of Section 1981 in *Patterson* and *Gonzalez,* however, were overruled by the Civil Rights Act of 1991. Public Law 102–166 § 101. The Civil Rights Act of 1991 added the following subsection to 42 U.S.C. § 1981:

> (b) For the purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

42 U.S.C. § 1981(b). Unfortunately, the Civil Rights Act of 1991 does not apply retroactively to suits pending at the time of its enactment. *Kemp v. Flygt Corp.,* 791 F.Supp. 48, 51 (D.Conn.1992); *Reynolds v. Frank,* 786 F.Supp. 168, 170 (D.Conn.1992).

Plaintiff urges this court to follow *Leake v. Long Island Jewish Medical Center,* 869 F.2d 130, 131 (2d Cir.1989), which held that when Congress acts to clarify a Supreme Court decision and restore the law to a previous posture, then the enactment should be applied retroactively. However, this court previously declined to make piecemeal decisions regarding the retroactivity of certain portions of the Civil Rights Act of 1991 absent clear guidance from Congress, and thus held that the act as a whole was not retroactive. *Kemp,* 791 F.Supp. at 51. Therefore, because subsection b of Section 1981 does not apply to cases pending on the date of its enactment, plaintiff has failed to state a claim for which relief may be granted under Section 1981. Accordingly, counts two and six must be dismissed.

### Appropriateness of Forst as Defendant

Finally, defendants claim that Forst is not a proper party to this action because the claims against him were untimely. As discussed above, counts one through seven are not time barred and the relation back doctrine applies to the new claims asserted against Forst in the Second Amended Complaint. *See, e.g., Hill v. Shelander,* 924 F.2d 1370, 1375–78, *reh'g denied* (7th Cir.1991) (civil rights plaintiff permitted to amend complaint to name prison guard as a defendant in his individual, as well as official capacity). Thus, any claims against Forst in counts one through seven are timely.

Further, though inartfully drafted, the original complaint asserted claims against defendant Forst in both his official and individual capacities. It contained certain claims for relief which were available against Forst only in his individual capacity. In addition, this court noted that Forst was being sued in both capacities at the time of its October 26, 1988 ruling, which dismissed the claims for money damages against Forst only in his official capacity. Thus, Forst was on notice that he was being sued in both an individual and official capacity from the beginning of this action. The court finds, therefore, that Forst is a proper party to this action.

### Conclusion

For the reasons set forth above, defendants' motion to dismiss [51–1] is DENIED as to counts one, three, and four to the extent they seek prospective injunctive relief and related attorneys' fees and costs against Forst and Cioffi in their official capacities; DENIED as to counts five and seven to the extent they seek compensatory and punitive damages and attorneys' fees against Forst individually; and GRANTED as to all other claims.