**Andrew HARRIS, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, National Insurance Crime Bureau, Insurance Services Offices, Inc. and American Insurance Services Group, Defendants.**

No. 98 Civ. 7317 WCC.

United States District Court, S.D. New York.

Feb. 16, 2000.

Law Offices of Peter D. Hoffman, Katonah, NY (Peter D. Hoffman, Thomas A. Ghignone, of counsel), for plaintiff.

Bruno, Gerbino & Macchia, LLP, Allstate Insurance Company, Melville, NY (Steven D. Brower, of counsel), for defendant.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Andrew Harris, an African–American of West Indian descent, brings this action against defendant Allstate Insurance Company ("Allstate") alleging nine causes of action regarding Allstate's disclaimer of coverage for the theft of plaintiff's automobile.[1] Plaintiff claims that Allstate (1) disclaimed coverage based on his race in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e and 42 U.S.C. § 1981; (2) discriminated against him in violation of New York Civil Rights Law § 40–c, New York Executive Law § 292 *et seq.,* and the New York State Constitution, Article 1, § 11; (3) disseminated inaccuracies regarding plaintiff's insurance history in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681; (4) defamed plaintiff; (5) intentionally caused plaintiff to suffer emotional dis-

---

1. Plaintiff entered into stipulations discontinuing without prejudice his claims against the National Insurance Crime Bureau, Insurance Services Offices, Inc., and American Insurance Services Group.

tress; (6) intentionally interfered with plaintiff's insurance contract; (7) engaged in unfair settlement practices in violation of New York Insurance Law §§ 2601, 7701; (8) breached its contract with plaintiff; and (9) fraudulently induced plaintiff to enter into a contract. Defendant alleges that it disclaimed coverage because plaintiff failed to comply with policy conditions and made fraudulent misrepresentations regarding his loss. Plaintiff seeks declaratory and injunctive relief, requesting that this Court declare plaintiff innocent of any charges of fraud or car theft, and compensatory and punitive damages.

Defendant now moves for an order dismissing the complaint pursuant to Fed. R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 56(b). For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Plaintiff states that he was the owner of a 1994 Honda Accord which was stolen on February 11, 1996 while parked in front of 11 Bronx River Road, Yonkers. At that time, plaintiff states, he was insured by Geico Insurance and Geico covered this loss. Plaintiff alleges that the theft of his Honda was reported to an insurance consulting firm, the National Insurance Crime Bureau, and other insurance databases, Insurance Services Office, Inc. and its affiliate American Insurance Services Group. (Complt.¶ 22.)

On March 7, 1996, plaintiff purchased a 1992 Acura Legend from Interstate Auto Sales ("Interstate") in Yonkers, New York. The purchase price of the vehicle is in dispute. Plaintiff states that he bought the car for $20,397.50, and that he paid using two checks, one in the amount of $8,000, the other in the amount of $7,060, with the balance paid in cash. Plaintiff has submitted photocopies of the canceled checks and a photocopy of an invoice from Interstate showing a total of $20,397.50, the purchase price of $19,000, plus sales tax and an inspection fee, and that the total was paid in full. (Hoffman Aff., Ex. A.) Defendant claims that the purchase price of the car was fraudulently inflated by almost $5,000, and that the true purchase price of the car was $15,060, the total amount of the two checks.[2]

On September 7, 1996, plaintiff contracted with Allstate agent John F. DiNome for insurance for the 1992 Acura. On May 10, 1997, the Acura was stolen while plaintiff was visiting his mother and aunt at 11 Bronx River Road, Yonkers. The parties dispute the date plaintiff reported the theft to the police and to Allstate. Plaintiff claims that he notified Allstate and the police "immediately." (Pl. Rule 56.1 Stmt. ¶ 7.) Allstate claims that plaintiff notified Allstate of the loss on or about May 13, 1997. (Fischer Aff. ¶ 4.)

In support of his position, plaintiff points to a New York Police Department property clerk's invoice which shows that on May 10, 1997, plaintiff's Acura was found by police, damaged and with parts missing. (Hoffman Aff., Ex. C.) Plaintiff also offers a May 14, 1997 letter from Allstate claim representative Mary McGinley which states, "Allstate acknowledges receiving your report concerning the theft of your automobile," and asks plaintiff to send a

---

**2.** In support of this contention, defendant offers the affidavit of its special investigator Keith Fischer. Fischer states that he investigated plaintiff's claim and that:

Mr. Dominick Eaione, a principal of Interstate Auto Sales of Westchester, Inc., reviewed the purported purchase invoice and determined that it was fraudulent. Mr. Eaione produce[d] copies of the two checks used by Mr. Harris to purchase the vehicle and which totaled only $15,060.... Mr. Eaione did not recognize the handwriting

on the invoice and stated that it appeared as if 'white out' had been used to alter it. (Fischer Aff. ¶ 7.)

Fischer's testimony regarding what Mr. Eaione stated is hearsay, *i.e.*, an out-of-court statement offered to prove the truth of the matter asserted. Fed.R.Evid. 801(c). As such, this Court may not consider it in the adjudication of this motion. *See* Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits ... shall set forth such facts as would be admissible in evidence....").

copy of the police report to Allstate, together with other documents, including an "Affidavit of Automobile Total Theft." (*Id.*, Ex. D.) Plaintiff states that he completed the affidavit, had it notarized and sent it to McGinley on June 6, 1997. The affidavit shows that plaintiff stated he reported the loss to Yonkers police on May 11, 1997. (*Id.*, Ex. E.) In response, defendant proffers a police report which states that the loss was reported on May 13, 1997. (Brower Affirm., Ex. E.)

In the "Affidavit of Total Automobile Theft," plaintiff estimates that the car had 57,000 miles on it. (Hoffman Aff., Ex. E.) Defendant claims that an engineer retained by Allstate determined the car's "actual mileage was possibly 100,411 miles." (Fischer Aff. ¶ 9.)

Defendant states that due to the alleged discrepancies between plaintiff's assertions and the results of the Allstate investigation, defendant, through counsel, demanded on August 7, 1997 that plaintiff submit a sworn statement of proof of loss and extensive additional documentation. (*See* Hoffman Aff., Ex. F.) Plaintiff admits that he failed to comply with counsel's demands, and states that he telephoned Allstate's lawyer, Franklin D. Tell, and left a message for him on August 14. On August 19, plaintiff called Tell again and the two discussed the August 7 correspondence. Plaintiff states that he requested a full explanation of the need for him to submit "personal financial information that he considered private" and of the short time limit of fifteen days to produce the other documents demanded. (Pl. Rule 56.1 Stmt. ¶ 12.) Plaintiff subsequently sent Tell a letter dated September 19, 1997 in which plaintiff promised to deliver the requested materials as soon as he received the certificate of title from the Department of Motor Vehicles and expressing concern as to whether Allstate's requests were legitimate. (Hoffman Aff., Ex. H.)

In a letter dated October 17, 1997, Allstate disclaimed coverage for plaintiff's loss, citing the following policy provisions:

**Concealment or Fraud**

This policy is void if . . . you intentionally conceal or misrepresent any material fact or circumstance, before or after loss.

**What You Must Do If There Is A Loss**

(1) As soon as possible, any person making claim must give us written proof of loss. It must include all details reasonable [sic] required by us. We have the right to inspect the damaged property. We may require any person making claim to file with us a sworn proof of loss. We may also require that person to submit to examination under oath.

(2) Protect the auto from further loss. We will pay reasonable expenses to guard against further loss. If you don't protect the auto, further loss is not covered.

(3) Report all theft losses promptly to police.

(Hoffman Aff., Ex. I.)

Plaintiff requested assistance from the New York State Insurance Department to resolve his dispute with Allstate. The Insurance Department, by letter dated September 11, 1998, declined to assert jurisdiction, stating: "We find that this disputed claim involves questions of fact as to what actually occurred, an issue which this Department is without authority to decide." (*Id.*, Ex. J.)

## DISCUSSION

### I. *Summary Judgment Standard*

Defendants move for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 56(b). The motion will be treated as a motion for summary judgment as "matters outside the pleading" have been presented to and considered by the Court. Fed.R.Civ.P. 12(b). Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all reasonable inferences against the movant. *See id.* The court's role at this stage of the litigation is not to decide genuine issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). Summary judgment may not be granted simply because the court believes the plaintiff will not be able to meet his burden of persuasion at trial. *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 54 (2d Cir.1998).

## II. *Plaintiff's Failure to Submit a Sworn Statement of Proof of Loss*

As a threshold matter, defendant claims that plaintiff's action on the policy is barred because plaintiff failed to submit a sworn statement of proof of loss as requested by Allstate's attorney in his August 7, 1997 letter to plaintiff. Plaintiff's insurance policy contains a clause setting forth his duty to provide defendants with a sworn statement of proof of loss if requested by the insurance company. (*See* Brower Affirm., Ex. C. at 27.) In New York, this duty is prescribed by Section 3407(a) of New York Insurance Law, which states in relevant part:

> The failure of any person insured against loss or damage to property under any contract of insurance, issued or delivered in this state or covering property located in this state, to furnish proofs of loss to the insurer or insurers as specified in such contract shall not invalidate or diminish any claim of such person insured under such contract, unless such insurer or insurers shall, after such loss or damage, give to such insured a written notice that it or they desire proofs of loss to be furnished by such insured to such insurer or insurers on a suitable blank form or forms. If the insured shall furnish proofs of loss within sixty days after the receipt of such notice, such insured shall be deemed to have complied with the provisions of such contract of insurance relating to the time within which proofs of loss are required.

N.Y. Ins. § 3407(a).

It is well-settled New York law that "[w]hen an insurer gives its insured written notice of its desire that proof of loss under a policy of ... insurance be furnished and provides a suitable form for such proof, failure of the insured to file proof of loss within 60 days after receipt of such notice, or within any longer period specified in the notice, is an absolute defense to an action on the policy, absent waiver of the requirement by the insurer or conduct on its part estopping its assertion of the defense." *Igbara Realty Corp. v. New York Property Ins. Underwriting Ass'n.,* 63 N.Y.2d 201, 209–10, 481 N.Y.S.2d 60, 470 N.E.2d 858 (N.Y.1984); *see also Anthony Marino Constr. Corp. v. INA Underwriters Ins. Co.,* 69 N.Y.2d 798, 513 N.Y.S.2d 379, 505 N.E.2d 944 (1987); *Argento v. Aetna Cas. and Sur. Co.,* 184 A.D.2d 487, 584 N.Y.S.2d 607 (N.Y.App. Div.1992); *Dillinger Gaines Coachworks, Ltd. v. Fireman's Fund Ins. Co.,* No. 91 CIV. 7471, 1992 WL 230130 (S.D.N.Y. Aug., 31, 1992); *Desmoni v. Allstate Ins. Co.,* No. 93 CIV. 3341, 1995 WL 396593 (S.D.N.Y. July 6, 1995). An insurer "is entitled to obtain, promptly and while the information is still fresh, all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect them against false claims." *Harary v. Allstate Ins. Co.,* 988 F.Supp. 93 (E.D.N.Y. 1997) (internal quotations and citations omitted), *aff'd,* 162 F.3d 1147 (2d Cir.1998).

The Court of Appeals of New York has interpreted § 3407(a) as requiring strict compliance by an insured with an insurer's request for proofs of loss:

> Although it has been said that that provision was enacted to protect "the insured from the consequences of his oversight or neglect in complying with one of the conditions precedent to a recovery under the policy" (*Margulies v. Quaker City Fire & Mar. Ins. Co.*, 276 A.D. 695, 698, 97 N.Y.S.2d 100), and there is some testimony in the hearings by the Joint Legislative Committee for the Recodification of the Insurance Law held August 5, 1938 and December 21, 1938 that would support that statement, its language goes no further than to require that the insurer bring to the attention of the insured, by making written demand for proofs and providing blank forms, the necessity for filing such proofs. But, if such a demand is made, the insured will be deemed in compliance with the policy's requirement only if he or she "shall furnish proofs of loss within sixty days after receipt of such notice and such form or forms, or within any longer period of time specified in such notice."

*Igbara Realty*, 63 N.Y.2d at 216, 481 N.Y.S.2d 60, 470 N.E.2d 858.

In the instant case, plaintiff admits that he received an August 7, 1997 letter from defendant's attorney stating:

> Please take notice that pursuant to the terms and conditions of the policy of insurance and the insurance laws of the State of New York, we herewith enclose two blank proofs of loss which we demand that you complete, sign before a notary public and return to the undersigned within the time required by the policy of insurance and Insurance Law § 3407(a).

(Hoffman Aff., Ex. F.)

Plaintiff further admits that he received notice via letter dated October 17, 1997 that Allstate was disclaiming coverage for the loss of his car based on his breach of policy conditions relating to fraud and sworn proof of loss. (*Id.*, Ex. I.) Plaintiff states that he received this letter several days after it was sent to him, more than sixty days after Allstate's counsel requested the sworn proof of loss statements.

Plaintiff claims that defendant required him to return the documents it requested within fifteen days in contravention of § 3407(a). However, the August 7 letter from Allstate's counsel asks that plaintiff return the proofs of loss "within the time required by the policy of insurance and Insurance Law § 3407(a)." (Hoffman Aff., Ex. F.) A defendant insurer is not estopped from asserting a defense based on the insured's failure to submit proof of loss within sixty days because the insurer's demand letter failed to state a date by which the proofs must be filed. *Anthony Marino Constr.*, 513 N.Y.S.2d 379, 505 N.E.2d at 944.

Plaintiff also claims that by responding to a May 14, 1997 letter from Allstate claim representative Mary McGinley asking plaintiff to send to Allstate, among other documents, an "Affidavit of Automobile Total Theft," (*id.*, Ex. D), he met the policy's requirements. (*See* Pl. Mem.Opp.Summ.J. at 6.) As discussed above, plaintiff states that he completed the affidavit, had it notarized, and sent it to McGinley on June 6, 1997. The affidavit consists of sixty-five questions regarding the drivers of the vehicle, the vehicle's purchase and repair history, the details of the theft, and the vehicle's insurance. (*Id.*)

The New York Supreme Court, Appellate Division has found that where a plaintiff submitted a "detailed, signed statement to defendant's agent identifying the nature and extent of the loss ... [t]hat statement satisfied plaintiff's obligation under the policy to furnish defendant with proof of loss." *DeSantis v. Dryden Mut. Ins. Co.*, 241 A.D.2d 916, 917, 661 N.Y.S.2d 395 (N.Y.App.Div.1997). Thus, "no partic-

ular form of proof of loss is required as long as the proof submitted is sufficient to enable the insurer to consider its rights and liabilities." *P.S. Auctions, Inc. v. Exchange Mut. Ins. Co.*, 105 A.D.2d 473, 474–75, 480 N.Y.S.2d 610 (N.Y.App.Div.1984).

Here, however, plaintiff failed to meet the policy conditions and statutory requirements as to proof of loss. His answers on the "Affidavit of Total Automobile Theft" as to the car's purchase price and mileage were estimates only. Allstate subsequently requested that plaintiff provide it with sworn proof of loss and plaintiff failed to do so. Accordingly, plaintiff is barred from bringing an action under the policy and defendant is entitled to summary judgment on plaintiff's Eighth Cause of Action, breach of contract.

### III. *Plaintiff's Discrimination Claims*

#### A. *Section 1981 Claim*

Plaintiff claims that his "race was a motivating factor and made a difference in the decision not to pay on his valid claim on the policy", (Complt.¶ 42), in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. Section 1981 states in relevant part:

(a) All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law. 42 U.S.C.A. § 1981.

As a threshold matter, defendant argues that plaintiff may not bring a claim pursuant to section 1981 because the Supreme Court held in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), a case of employment discrimination, that § 1981 covers conduct at the initial formation of a contract and conduct which impairs the ability to enforce contractual rights through the legal process, but not conduct during the course of the contractual relationship. In support of this proposition, defendant cites a Fifth Circuit case, *Green v. State Bar of Texas*, 27 F.3d 1083 (5th Cir.1994), which held that *Patterson* barred an action against an insurer alleging that the insurer failed to honor a third-party contract between a licensed insurance adjuster and his clients solely because of the adjuster's race. (Def.Mem.Supp.Summ.J. at 9.) However, as the Fifth Circuit there recognized, *Patterson* was superseded by an amendment to § 1981, and the Fifth Circuit only applied *Patterson* because it was the law in force at the time of the alleged wrongful conduct. *See id.* at 1086 n. 3 ("Effective November 21, 1991, § 1981 was amended, and that amendment statutorily overruled Patterson.").

■ Section 1981 was amended in 1991 to add subsections (b) and (c). Subsection (b) was added to overrule the *Patterson* decision. *See* H.R.Rep. 102–40(I), *reprinted in,* 1991 U.S.C.C.A.N. 546, 1991 WL 70454 at *199–200; *see also Shane v. State of Conn.*, 821 F.Supp. 829, 835 (D.Conn. 1993). The legislative history of the amendment indicates that Congress intended to afford broad relief from racial discrimination by reinstating the pre-*Patterson* protections. The amendment was "intended to aid the many persons subjected to blatant bigotry who currently lack any means of obtaining relief under federal law as a result of the Patterson decision." *Id.* at *200. In light of this legislative

history, it is clear that an insured whose claim has been denied based on his race is within the class of persons the statute was designed to protect.

■ To establish a claim under § 1981, a plaintiff must allege facts to support the following elements: (1) the plaintiff is a member of a racial minority; (2) defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (here, the making and enforcing of contracts). *Weiss v. La Suisse*, 69 F.Supp.2d 449, 460 (S.D.N.Y.1999).[3]

■ The adjudication of a discrimination claim pursuant to § 1981 follows the three-step procedure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1822, 1824–26, 36 L.Ed.2d 668 (1973). *See Tripp v. Long Island Univ.*, 48 F.Supp.2d 220, 223 (E.D.N.Y.1999). Once plaintiff has successfully established a prima facie case of discrimination by a preponderance of the evidence, there is a rebuttable presumption of discrimination and the burden of going forward then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the action. *Id.* If the defendant does so, plaintiff must prove, again by a preponderance of the evidence, that the legitimate reasons offered by the defendant are a mere pretext for discrimination. *Id.*

■ Although the plaintiff's initial burden of making a prima facie case is a light one, the complaint must state more than conclusory allegations of discrimination. The plaintiff must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v.*

Vassar College, 35 F.3d 709, 713 (2d Cir. 1994).

■ Plaintiff has failed to make specific allegations regarding defendant's alleged race discrimination. Plaintiff alleges first that Allstate and other insurance agencies exchange claims information with "consulting businesses and databases that list all persons making claims against insurance companies." (Complt. ¶ 12.) Plaintiff alleges that the "result of this scheme of shared information resources, the free exchange of information, the unverified collection of data, and the creation of databases ... is to create a sophisticated scheme of geographical and racial redlining in how claims against insurance companies including Allstate are processed." (Complt.¶ 18.) Plaintiff alleges that the theft of his Honda Accord was reported to such an agency, and that Allstate's denial of his claim was motivated by his race.

Plaintiff states that Allstate was aware of his race because he was required to provide Allstate with his driver's license and because the address from which his Acura was stolen "was in a geographical location of Yonkers, New York that is known to be predominantly of African–American descent." (Pl.Mem. Opp.Summ.J. at 8.) Plaintiff asks the Court for the opportunity to discover whether other people of African–American descent in similar geographic areas have had similar difficulties in enforcing their contractual rights with defendant. (*Id.* at 9.)

Plaintiff has successfully established the first prong of the prima facie case. Arguably, he also has met the third prong, that the alleged discrimination concerned the making and enforcement of a contract. However, plaintiff has failed to allege facts giving rise to a plausible inference of purposeful discrimination. He states that All-

---

**3.** Because New York courts require the same standard of proof for discrimination claims brought pursuant to state law as that required for federal discrimination claims, we will analyze these claims in tandem. *See Quinn v.*

*Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998); *Farrell v. Child Welfare Admin.*, 77 F.Supp.2d 329, 332 (E.D.N.Y.1999); *Rivera v. Hertz Corp.*, 990 F.Supp. 234, 236 (S.D.N.Y. 1997).

state denied his claim with the knowledge that plaintiff's prior vehicle had been stolen from the same location from which his Acura was taken. However, the mere facts that plaintiff is an African–American, that the address from which plaintiff twice had his car stolen was, in his words, "in a geographic location ... known to be predominantly of African American descent," and that Allstate denied his claim fail to establish by a preponderance of the evidence that defendant intended to discriminate against him because of his race.

Even if this Court were to afford plaintiff the opportunity to conduct further discovery with regard to whether the claims of other African–American insureds were denied, plaintiff could not discover anything which would enable him to succeed on this cause of action. Pursuant to New York law and the policy, defendant was entitled to deny plaintiff's claim for plaintiff's failure to submit a sworn proof of loss statement. Plaintiff would have to show that defendant selectively denied claims of those who failed to comport with the proof of loss requirement based on their race. No rational insurer would gratuitously waive that absolute defense to a claim under the policy of any insured, regardless of race. Plaintiff has offered nothing other than rank speculation in support of his claim that defendant acted with discriminatory intent.

■ Plaintiff also has brought a discrimination claim alleging that defendant violated N.Y.Civ.Rts.Law § 40–c, which provides that "[n]o person shall, because of race ... be subjected to any discrimination in his civil rights ... by any other person or by any firm, corporation or institution." N.Y.Civ.Rts.Law § 40–c (McKinney 1992). As defendant correctly notes, in order to bring a claim pursuant to this section, a plaintiff must first notify the state attorney general. *See* N.Y.Civ.Rts. Law § 40–d (McKinney 1992). Failure to comply with that statutory prerequisite mandates dismissal of the claim. *Silver v. Equitable Life Assurance Soc'y of the United States,* 168 A.D.2d 367, 563 N.Y.S.2d 78, 80 (N.Y.App.Div.1990); *Rivera,* 990 F.Supp. at 238; *Harvey v. NY-RAC, Inc.,* 813 F.Supp. 206, 212 (E.D.N.Y. 1993). Plaintiff does not dispute that he failed to give notice to the state attorney general; thus his claim pursuant to N.Y.Civ.Rts.Law § 40–c must be dismissed.

For these reasons, defendant is entitled to summary judgment dismissing plaintiff's First Cause of Action, violations of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981 and plaintiff's Second Cause of Action, violations of N.Y.Civ.Rts.Law § 40–c, N.Y.Exec.Law § 292 *et seq.,* and N.Y. Const. Art. 1, § 11.

### IV. *Plaintiff's Remaining Claims*

#### A. *Violation of N.Y.Ins.Law § 2601*

■ . Plaintiff claims that defendant engaged in unfair settlement practices, breaching its duty of good faith and fair dealing in violation of N.Y.Ins.Law § 2601. The New York Court of Appeals has held that § 2601 does not give rise to a private right of action. *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 317–18, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). There, the Court of Appeals stated that "the provisions of the Insurance Law are properly viewed as measures regulating the insurer's performance of its contractual obligations, as an adjunct to the contract, not as a legislative imposition of a separate duty of reasonable care." *Id.; see also Northwestern Mut. Life Ins. Co. v. Wender,* 940 F.Supp. 62, 64 n. 2 (S.D.N.Y. 1996). Accordingly, this claim fails as a matter of law and defendant is entitled to summary judgment dismissing plaintiff's Seventh Cause of Action, violation of N.Y.Ins.Law § 2601.

#### B. *Fraud in the Inducement to Contract*

■ Plaintiff claims that he was fraudulently induced to contract with defendant.

The essential elements of a cause of action for fraud are: (1) misrepresentation of a material existing fact; (2) with the intent to deceive the plaintiff; and (3) the plaintiff is actually deceived; (4) causing him injury. *See New York Univ.*, 87 N.Y.2d at 318, 639 N.Y.S.2d 283, 662 N.E.2d 763. (Complt.¶¶ 102–05.) In the context of a claim for fraud in the inducement of an insurance contract, the New York Court of Appeals has stated:

> At the very threshold … plaintiff must allege a misrepresentation or material omission by defendant, on which it relied, that induced plaintiff to purchase the policy of insurance. General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the claim.

*Id.*

 Plaintiff alleges that defendant failed to inform plaintiff "of his place on the database and induced Plaintiff to contract when it knew that it would not fulfill substantial portions of its contractual obligations." (Complt.¶ 104.) This claim amounts to no more than an allegation that defendant entered into the contract with the intention of failing to perform its obligations under the contract. As stated above, this allegation fails, as a matter of law, to support plaintiff's fraud claim. Nor is a fraud claim supported by plaintiff's conclusory allegations that defendant has, in other situations, been accused of race discrimination in its handling of claims. *See New York Univ.*, 87 N.Y.2d at 319, 639 N.Y.S.2d 283, 662 N.E.2d 763 (holding plaintiff's allegations that defendant insurer engaged in scheme to receive premium payments without giving any benefits in return failed to state claim for fraud in inducement to contract). Accordingly, defendant is entitled to summary judgment dismissing plaintiff's Ninth Cause of Action, fraud in the inducement to contract.

## C. *Intentional Interference with Contractual Relations*

 Plaintiff claims that by sharing information with insurance consultants and databases, defendant has intentionally interfered with plaintiff's contractual relations. A claim of tortious interference requires proof of the following: (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach; and (4) damages. *Foster v. Churchill*, 87 N.Y.2d 744, 642 N.Y.S.2d 583, 665 N.E.2d 153, 156 (1996). Economic interest is a defense to an action for tortious interference with a contract in the absence of a showing of malice or illegality. *Id.*

We note that plaintiff discontinued without prejudice his claims against the National Insurance Crime Bureau, Insurance Services Offices, Inc., and American Insurance Services Group. He has alleged no facts in support of a claim of intentional interference against Allstate. The only contract plaintiff has placed at issue is the policy between himself and Allstate, claiming that:

> based on the information contained in the databases lawfully operated by the National Insurance Crime Bureau and the fact that Plaintiff's previous claim for a stolen automobile was contained therein, in addition to the fact that plaintiff is of African–American descent and complied with the requirements of the policy, Allstate deliberately and without justification denied plaintiff's claims based on frivolous claims of fraudulent conduct and refusal to comply with the policy's conditions.

(Pl.Mem.Opp.Summ.J. at 12–13.)

Plaintiff has failed to allege that defendant interfered with any third-party contractual relations. Accordingly, defendant is entitled to summary judgment dismissing plaintiff's Sixth Cause of Action, intentional interference with contractual relations.

## D. *Defamation*

 Plaintiff claims that defendant defamed him by collecting and disseminat-

ing inaccurate and false information about his insurance history. (Complt.¶¶ 61–62.) The elements of a claim for defamation are: (1) a false statement; (2) published without privilege or authorization to a third party; (3) constituting fault as judged by, at least, a negligence standard: (4) causing special harm (unless the statement was defamatory per se). *Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1, 4 (1999). Truth is a complete defense to a defamation claim. *Id.* at 5.

New York courts recognize "an established rule that communications made by one person to another upon a subject in which both have an interest are protected by a qualified privilege." *Brennan v. Granite Equip. Leasing Corp.*, 60 A.D.2d 877, 401 N.Y.S.2d 275, 277 (N.Y.App.Div. 1978) (internal citations and quotations omitted). Thus, where, as here, the alleged defamatory communication is between an insurer and an information clearinghouse for insurance companies, the statement is protected by a qualified privilege. *See Schuss v. William Penn Life Ins. Co. of New York*, 188 A.D.2d 456, 590 N.Y.S.2d 539 (N.Y.App.Div.1992); *Kenna v. New York Mut. Underwriters*, 188 A.D.2d 586, 591 N.Y.S.2d 479, 480 (N.Y.App.Div.1992). In order to overcome this privilege, plaintiff must demonstrate that defendant acted with malice. *See Schuss*, 590 N.Y.S.2d at 539.

Assuming, without deciding, that plaintiff has otherwise established a prima facie case of defamation, plaintiff has failed to come forward with any proof that defendant was motivated by malice. Where a defendant's statements are presumptively privileged, "the rule is that, in order to render them actionable, it is incumbent upon the plaintiff to prove that (they were) false and that the defendant was actuated by express malice or actual ill-will." *Brennan*, 401 N.Y.S.2d at 277 (internal citations and quotations omitted). Even accepting as true plaintiff's allegation that defendant

made a false statement for purposes of this summary judgment motion, falsity alone is insufficient for an inference of malice. *Id.* Malice means "personal spite or ill-will, or culpable recklessness or negligence." *Id.* (internal citations and quotations omitted). Here, plaintiff has failed to come forward with facts or circumstances that would tend to show malice on defendant's part. For these reasons, defendant is entitled to summary judgment dismissing plaintiff's Fourth Cause of Action, defamation.

### E. *Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681*

Plaintiff claims that defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* by its "indiscriminate and unverified [ ] dissemination of Plaintiff's insurance history without any control or verification as to accuracy." (Complt.¶ 58.) As noted above, plaintiff has entered into stipulations discontinuing without prejudice his claims against the National Insurance Crime Bureau, Insurance Services Offices, Inc., and American Insurance Services Group.

Plaintiff has failed to allege facts that would bring Allstate within the ambit of the Fair Credit Reporting Act. In his complaint, plaintiff merely makes a broad, conclusory allegation that defendant used information gained from insurance databases "to create a sophisticated scheme of geographical and racial redlining" in how claims against it are processed. (Complt. ¶ 18.) Such an allegation without more is insufficient to withstand a motion for summary judgment. Defendant has submitted a report compiled by the National Insurance Crime Bureau which does not designate plaintiff's race, but lists only his name and address, information about his insurers and details regarding the theft of his two automobiles—details which are not in dispute. Accordingly, defendant is entitled to summary judgment dismissing plaintiff's Third Cause of Action, violations of the Fair Credit Reporting Act.

## F. *Intentional Infliction of Emotional Distress*

■ Plaintiff brings a claim against defendant for intentional infliction of emotional distress, claiming that "Allstate deliberately and without justification denied plaintiff's claims based on frivolous claims of fraudulent conduct and refusal to comply with the policy's conditions." (Pl.Mem. Opp.Summ.J. at 13.) The tort of intentional infliction of emotional distress has the following elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Pepe v. Maklansky,* 67 F.Supp.2d 186, 187 (S.D.N.Y.1999). The New York courts have set a strict standard for adjudging whether conduct is sufficiently "extreme and outrageous" to be actionable. In fact, in *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993), the New York Court of Appeals noted that "of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous.... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal citations and quotations omitted).

■ Applying these rigorous standards, the Court finds that plaintiff's claim for intentional infliction of emotional distress fails as a matter of law. This case, "at its core, is one for breach of contract based on a failure to pay insurance benefits with an extra twist," here, regarding the results of defendant's investigation into plaintiff's claim. *MaGee v. Paul Revere Life Ins. Co.,* 954 F.Supp. 582, 587 (E.D.N.Y.1997). Plaintiff has come forward with no proof that defendant's actions were indeed motivated by plaintiff's race rather than by plaintiff's failure to comport with the policy conditions and the New York Insurance Law. Accordingly, defendant is entitled to summary judgment dismissing plaintiff's Fifth Cause of Action, intentional infliction of emotional distress.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted in all respects. The Clerk of the Court shall enter judgment for defendant Allstate dismissing the complaint in its entirety with prejudice.

SO ORDERED.